**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

**BERNARD CORBITT**                                                                              **PLAINTIFF**

**V.**                                                 **CIVIL ACTION NO. 3:10CV558 CWR-LRA**

**MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY**                                  **DEFENDANT**

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Bernard Corbitt appeals the final decision denying his applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that the decision be affirmed.

**Procedural Background**

On January 29, 2008, Plaintiff filed his applications for SSI and DIB alleging a disability onset date of October 6, 2005, due to diabetes and depression. He was 23 years old at the time. The applications were denied initially and on reconsideration. He timely appealed the denial and appeared *pro se* at the administrative hearing, which was held on September 29, 2009. On October 20, 2009, Administrative Law Judge Larry J. Stroud ("ALJ") rendered an unfavorable decision finding that Plaintiff was not disabled.

Plaintiff submitted new evidence in support of his prior claim on February 9, 2010 and on April 9, 2010. On August 5, 2010, the Appeals Council issued an order advising that it had considered the new evidence, but it did not provide a basis for changing the ALJ's decision. The Council denied Plaintiff's request for review, and he now appeals that decision.

The Court notes that Plaintiff filed a second application for benefits on December 31, 2009, and he *was awarded SSI benefits as of that date*.

## Facts and Medical Evidence

Plaintiff was born on April 25, 1982, and has an 11th grade education. He has past relevant work experience as an auto-detailer and line-worker at a chicken processing plant. He is 5'5" tall, weighs over 300 pounds, and has a Body Mass Index (BMI) of 50.9. His medical impairments include insulin-dependent diabetes mellitus, degenerative joint disease, arthralgias-multiple sites, schizo-affective disorder, sleep apnea, obesity, and depression. He identified diabetes as his worst medical problem at his administrative hearing, and testified that he spends a typical day walking around town in an effort to lose weight. He also testified that even though he eats the right foods and exercises, his sugar "stays high," and insulin causes him stomach pain and digestive problems.[1]

Medical records indicate that Plaintiff first reported depression to his primary treating physician, Dr. Elias Abboud, in early 2008, and was given Lexapro and Seroquel.

---

[1] ECF No. 6-3, pp. 29-39.

Approximately three weeks later, he was examined by consulting psychologist, Dr. Michael Whelan. During the examination, Plaintiff advised Dr. Whelan that he had stopped working three years prior because of his diabetic condition, and had recently begun insulin injections to stabilize his sugar levels. He also advised that he had not stopped crying since his diabetes diagnosis because it reminded him of his father, who died seven years earlier from another illness. Plaintiff also reported trouble sleeping, crying spells, headaches, fatigue, and difficulty with anger. He explained that he often gets angry with his wife for no reason at all, and that increasing financial stressors also cause him to feel depressed. His daily activities as initially described to Dr. Whelan include crying and watching television, but he later acknowledged that he cared for his minor child while his wife worked. He occasionally plays video games with his older brother, but has become increasingly withdrawn since his diabetes diagnosis. He no longer drives because his medication causes his vision to be blurred, but he is able to attend to his personal needs, cook, and perform other minor chores around the house.[2]

Based on his observations and findings, Dr. Whelan diagnosed Plaintiff with a moderately severe dysthymic disorder, with features of bereavement disorder related to his father's death. But he attributed the primary cause of Plaintiff's depression to the onset of his diabetic condition when he "stopped participating in the work force." He opined that somatic complaints would interfere with Plaintiff's ability to get along with supervisors,

---

[2] ECF No. 6-10, pp. 10-13.

and that he would "probably have some difficulty with maintaining his attention and concentration."  His abstract reasoning remained good, however.  He found no evidence of psychotic symptoms, suicide ideation, or hospitalization, and noted that Plaintiff had only recently begun taking antidepressants.[3]  Although his prognosis was guarded, Dr. Whelan concluded that Plaintiff's mood disorder was treatable.

A psychiatric review completed by psychological consultant, Dr. Angela Herzog, in March 2008, notes that Plaintiff became depressed after his father died and he was diagnosed with diabetes.  She notes that Plaintiff had no known history of mental health treatment; had only recently began taking antidepressants as prescribed by his non-psychiatric physician; and, that his limitations in interpersonal functioning were merely "symptomatic of his heretofore untreated depression."  She also indicates that Plaintiff was moderately limited in two or more functions in the areas of understanding and memory, concentration and persistence, social interaction, and adaptation, but has no marked limitations "that would disable him from some types of work."  His only marked limitation was in his ability to carry out detailed instructions.  He was not otherwise significantly limited in his ability to understand and remember very short and simple instructions; to sustain an ordinary routine without supervision; to work in coordination with or proximity to others without being distracted by them; to ask simple questions and request assistance; and to maintain socially appropriate behavior.  Dr. Herzog concludes that:

---

[3]*Id*.

> The [claimant] retains the mental capacity to understand and carry out instructions for learning to perform simple work tasks. Mental capacity for maintaining attention and concentration within two hour periods is sufficient for completing work tasks without excessive interruptions from psychological symptoms. The claimant can interact adequately to receive non-confrontational supervision, and can interact on a casual, non-frequent basis with co-workers. Mental adaptions which are infrequent and gradual can be tolerated by the claimant as required to complete simple work tasks for which he remains physically capable.[4]

A few weeks after Dr. Herzog completed her report, Dr. Abboud submitted medical records to the Social Security Administration, including a note that he had handwritten on a prescription pad. The note indicated that Plaintiff suffers from insulin dependent diabetes mellitus, depression, obesity, and joint pain, and could not return to his past work or perform any jobs that required physical exertion.[5]

### Findings of the Administrative Law Judge

After reviewing the evidence, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. At step one of the five-step sequential evaluation,[6] the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date, October 6, 2005. At steps two and three, the ALJ found that although Plaintiff's obesity, arthralgia, and depression were severe, none of these impairments alone or in combination,

---

[4]ECF No. 6-10, pp. 28-40.

[5]ECF No. 6-10, p. 37.

[6]Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

met or medically equaled any listing. With regard to Plaintiff's diabetes, he noted that there was no end organ damage. At step four, the ALJ found that Plaintiff has the residual functional capacity to perform simple, repetitive tasks. Relying on vocational expert testimony at step five, the ALJ concluded that given Plaintiff's age, education, work history, and residual functional capacity, he can perform work as a ticket checker, foundation maker, and surveillance monitor.

**New Medical Evidence**

After the ALJ's October 2009 unfavorable decision, Plaintiff secured legal representation and submitted the following new evidence to the Appeals Council: (1) a Physical Medical Source Statement Questionnaire completed by Dr. Abboud in December 2009; and, (2) a Psychological Report completed by DDS examiner Stella Brown, PhD, in March 2010.

Dr. Abboud's new report indicates that Plaintiff's "pain and other symptoms" would frequently interfere with his ability to maintain attention and concentration to perform even simple work tasks, and that his "physical and mental conditions" would render him incapable of performing even "low stress jobs." He describes Plaintiff's prognosis as fair, but notes that his impairments would produce good and bad days, and cause him to miss more than four days of work per month. He reports that functionally, Plaintiff cannot lift more than 10 pounds frequently, 20 pounds occasionally, and never anything over 50 pounds. He can occasionally twist, stoop, crouch, and climb stairs, but

6

never ladders. He cannot sit, stand, or walk for more than two hours; needs to shift positions at will; and should elevate his legs when he sits for prolonged periods of time. The doctor found no significant limitations in reaching, handling, or fingering, but indicated that Plaintiff would be limited in fine manipulation, overhead reaching, grasping, turning, and twisting objects 50% of the workday. No psychological, visual, environmental, or other limitations are otherwise noted.[7]

In a letter to the Appeals Council dated April 9, 2010, Plaintiff's counsel requested consideration of the findings of Dr. Stella Brown, which he described as follows: Dr. Brown reportedly diagnosed Plaintiff with "major depressive disorder, single episode, severe, with possible psychotic features and personality disorder, NOS." She noted that Plaintiff was irritable, easily angered, depressed and crying during the examination, particularly when discussing his father's death. She opines that Plaintiff's "problems with anger, getting along with others, and difficulties in general with interpersonal relationships suggests a possible maladaptive characterological approach to life that may also contribute to problems with depression, because he has a poor ability to get along with others." She concludes that Plaintiff would have problems concentrating, focusing on the task at hand, and learning novel tasks, "which would impair his ability to perform simple, routine and repetitive tasks on a predictable basis in the work place."[8]

---

[7] ECF No.7, pp. 19-24 .

[8] ECF No. 6-3, pp. 6-7.

In its order affirming the ALJ's denial of benefits, the Appeals Council advised that it had reviewed the additional evidence, but found it did not "provide a basis for changing the ALJ's decision." In particular, the Appeals Council noted that Dr. Brown's report, which was dated over six months after the ALJ's decision, was about a later time and did not affect the Commissioner's decision as to whether he was disabled prior to September 2009.[9]

**Standard of Review**

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

---

[9]ECF No. 6-3, pp. 1-4 .

When additional evidence is presented to and considered by the Appeals Council, the evidence becomes part of the administrative record and a reviewing court must determine whether the denial of benefits remains supported by substantial evidence. *Jones v. Astrue*, 228 F. App'x. 403 (5th Cir. 2007); *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005). The Appeals Council considers additional evidence only if it is new, material, and relates to the period on or before the ALJ's decision. 20 C.F.R. § § 404.970(b), 404.976 (B). "Evidence that was 'not in existence at the time of the administrative . . . proceedings meets the 'new' requirement for remand to the Secretary.'" *Hunter v. Astrue*, 283 Fed.Appx. 261, 262 (5th Cir. 2008). To be material, the evidence must "relate to the time period for which benefits were denied," and it may not "concern evidence of a later-acquired disability, or of the subsequent deterioration of a previously non-disabling condition." *Haywood v. Sullivan*, 888 F.2d 1463, 1471-72 (5th Cir. 1989) (quoting *Johnson v. Heckler,* 767 F.2d 180, 183 (5th Cir. 1985)). There must also be a reasonable possibility that the evidence would have changed the outcome of the Commissioner's determination. *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

## Discussion

Plaintiff argues that the Commissioner's decision should be reversed or alternatively remanded because (1) the ALJ erred in failing to find that his diabetes mellitus was a severe impairment; (2) the ALJ failed to properly assess his residual functional capacity; and, (3) the Appeals Council erred in failing to properly consider new

9

evidence. The Court finds that the Commissioner's decision comports with all relevant legal standards and is supported by substantial evidence.

### 1. Substantial evidence supports the ALJ's severity determination.

Plaintiff argues that the ALJ failed to apply the correct legal standard at step two, and as a result, erred in finding that obesity, arthralgia, and depression were his only severe impairments. In particular, he objects to the ALJ's finding that his diabetes mellitus was not severe because "the record contains no evidence of any end organ damage which resulted from this impairment."[10] He contends that Fifth Circuit case law does not require that a claimant's diabetes mellitus result in end organ damage to be found severe at step two, and the ALJ's finding to the contrary requires automatic reversal or remand. He alternatively argues that he produced sufficient evidence to sustain his burden of demonstrating the severity of his diabetes at step two. Aside from alleging diabetes mellitus as a disabling impairment in his benefits application, he argues that he repeatedly complained of headaches, blurred vision, left hand pain, fatigue, and stomach problems, all of which "could reasonably result from his uncontrolled diabetes."[11] He also points to his testimony identifying diabetes as his worst medical problem, and how despite eating the right foods, exercising, and medication, his sugar levels remain elevated.

---

[10]ECF No.6-3, p. 22 . The Court notes that Plaintiff does not make the same argument with regard to his sleep apnea.

[11]ECF No. 7, p. 13.

10

To elicit an automatic presumption of disability at step two, diabetes mellitus must be accompanied by significant complications such as neuropathy, acidosis, or retinitis proliferans. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 at § 9.08. Absent these complications, the Fifth Circuit considers diabetes mellitus a remediable condition and thus not disabling under the Social Security Act. *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987) (citing *Epps v. Harris*, 624 F.2d 1267, 1270 (5th Cir. 1980)). Although Plaintiff maintains that he repeatedly complained of headaches and blurred vision, the ALJ may not make speculative inferences from medical reports, particularly where, as here, the record does not reflect diagnoses for neuropathy, acidosis, or retinitis proliferans. While the records reflect Plaintiff listed headaches, blurred vision, hand pain, and fatigue on disability forms submitted during the administrative process, Dr. Abboud's contemporaneous reports do not confirm he *frequently* complained of these conditions. Nor is there objective evidence that these conditions caused exertional difficulties or were otherwise severe. A claimant's subjective complaints must be corroborated, at least in part, by objective medical evidence. Further, courts in this circuit frequently consider end organ damage in evaluating the severity of diabetes. See *Stokes v. Shalala*, 7 F.3d 229 (5th Cir. 1993) (unpublished); *Webb v. Astrue*, 4:08 CV 747, 2010 WL 1644898 (N.D. Tex. Mar. 2, 2010)*; Berry v. Sullivan*, Civ. A. 89-4519, 1991 WL 29031 (E.D. La. Feb. 25, 1991).

The ALJ also expressly referenced *Stone v. Heckler* in evaluating the severity of Plaintiff's diabetes mellitus in compliance with controlling Fifth Circuit law. *Stone*, 752 F.2d 1099 (5th Cir. 1985). *Stone* holds that an impairment is not severe "'only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" *Id*. at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir.1984)). But even if the ALJ erred as Plaintiff argues, the failure to make a severity finding at step two alone is not grounds for reversal or remand. *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) (ALJ's failure to make a severity finding at step two not a basis for remand where ALJ proceeded to later steps of the analysis). "*Stone* merely reasons that the [severity] regulation cannot be applied to summarily dismiss, **without consideration of the remaining steps in the sequential analysis**, claims of those whose impairment is more than a slight abnormality." *Loza v. Apfel*, 219 F.3d, 378, 391 (quoting *Anthony*, 954 F.2d at 294)(emphasis added).[12]

---

[12]See *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987) ("[T]his case did not turn on whether or not [the claimant's] impairment was severe, but on whether [the claimant] could return to his past relevant work -- an inquiry unaffected by the test set forth in *Stone*."); *Black v. Astrue*, No. 3:10CV155 HTW-LRA, 2011 U.S. Dist. Lexis 96485 (Aug. 28, 2011) (adopting unpublished report and recommendation of undersigned United States Magistrate Judge, 3:10cv155, ECF No. 14, finding no reversible error where ALJ did not summarily dismiss disability claim at step two; although ALJ failed to cite *Stone*, he applied the *Stone* standard and proceeded with the sequential evaluation process)); *Hodge v. Astrue,* No. 3:10CV238 WHB-LRA (Sept. 8, 2011) (finding no reversible error where ALJ did not summarily dismiss disability claim at step two, but proceeded with sequential evaluation); *Jones v. Astrue*, No. 4:11CV053, 2012 WL 957660 (Mar. 20, 2012)("[I]n those cases where the administrative law judge found the existence of a severe condition at step two and went past step two to reach a decision at a

Plaintiff's claims were not summarily dismissed at step two here.  After finding that obesity, arthralgia, and depression were Plaintiff's only severe impairments, the ALJ found Plaintiff had the residual functional capacity to perform sedentary work, limited to simple, repetitive tasks.  In making this finding, he gave significant weight to Dr. Abboud's prescription-pad opinion that Plaintiff suffers from insulin dependent diabetes mellitus, depression, obesity, and joint pain and cannot return to his past relevant work or perform any job that requires physical exertion.  Thus, this case did not turn on a finding that Plaintiff's diabetes was not severe at step two, but on the ALJ's determination that Plaintiff retained the residual functional capacity to do sedentary work.[13]

**2.      Substantial evidence supports the ALJ's residual functional capacity assessment**.

Plaintiff argues that the ALJ's residual functional capacity assessment is not supported by substantial evidence because (1) the ALJ failed to obtain a medical source statement from Dr. Abboud setting forth his specific physical functional limitations, and

---

later step that benefits should be denied, there is no logic, common sense, or Fifth Circuit support for a conclusion that reversal and remand is required, or appropriate, if the only error of the administrative judge was his failure to use the *Stone* severity standard at step two of his analysis.").

[13] See also *Herrera v. Commissioner of Social Sec.*, 406 F. App'x 899 (5th Cir. 2010) (ALJ's failure to assess severity of social security disability claimant's anxiety or learning impairments did not warrant remand; case did not turn on finding that claimant's impairments were severe at step two, but instead the ALJ found that despite his severe impairments, claimant retained residual functional capacity to perform other work); *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) (ALJ's failure to make a severity finding at step two not a basis for remand where ALJ proceeded to later steps of the analysis); *Mays v. Bowen*, 837 F.2d 1362, 1365 (5th Cir. 1988) (per curiam) ("[I]f the ALJ proceeds past the impairment step in the sequential evaluation process the court must infer that a severe impairment was found.").

(2) the ALJ's limitation to "simple repetitive tasks" fails to account for the marked limitations assessed by Dr. Herzog. The Court rejects these arguments for the reasons that follow.

### A. Physical Capacity

A medical source statement is an opinion from a treating or examining source assessing a claimant's functional limitations, i.e., what activities a claimant can do despite his or her physical impairments. 20 C.F.R. § 404.1513(b)(6) 1994. The ALJ expressly indicated here that he considered Dr. Abboud's prescription-pad opinion a "treating source statement of sorts," but Plaintiff argues the opinion lacked sufficient specificity and the ALJ erred in failing to obtain a more thorough assessment. 20 C.F.R. § 404.1512 (d) & (e)(1). The Court finds the ALJ's limitation to sedentary work is consistent with Dr. Abboud's findings that Plaintiff should not perform work requiring physical exertion. But even if the ALJ erred as Plaintiff argues, the absence of a medical source statement does not, in and of itself, render the record incomplete. *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995). The critical issue is whether substantial evidence supports the ALJ's residual functional capacity determination that Plaintiff could perform sedentary work. Substantial evidence exists here.

In evaluating any medical opinion, the "amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the

14

opinion" must be considered. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *Perez v. Barnhart*, 415 F.3d 457, 466 (5th Cir. 2005). The Appeals Council is also bound to follow the same rules for considering medical opinion evidence as the ALJ. 20 C.F.R. § 404.1527 (f)(3).

As noted above, Dr. Abboud's new medical source statement indicates that Plaintiff has occasional lifting and postural limitations, and cannot sit, stand, or walk for more than two hours, and is required to shift positions at will. He does not expound, however, on what "medically acceptable clinical and laboratory diagnostic techniques" he bases his assessments, except a brief notation that Plaintiff's Hb A1C and triglycerides are elevated. He opines that Plaintiff's legs should be elevated when he sits for prolonged periods of times, but when asked "if your patient had a sedentary job, what percentage of time during an 8 hour working day should the leg(s) be elevated," he left this section blank. In that same vein, when asked to describe any other limitations, including visual limitations "that would affect Plaintiff's ability to work at a regular job on a sustained basis," he also left that section blank. "Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best. . . . [but when] these so-called reports 'are unaccompanied by thorough written reports, their reliability is suspect.'" *Mason v. Shalala*, 994 F.2d 1058, 1065 (3rd Cir. 1993) (quoting *Brewster v. Heckler*, 786 F.2d 581 (3rd Cir. 1986)). Their unreliability is only compounded further when sections are left

15

blank.[14]

Dr. Abboud's medical source statement is also internally inconsistent. He reports, for example, that Plaintiff has no significant limitations in repetitive reaching, handling, or fingering, while simultaneously finding that he would be limited in these areas 50% of the workday. He also opines that psychological factors would affect Plaintiff's physical condition and interfere with his ability to perform even low stress jobs or simple work tasks. This contradicts Dr. Herzog's opinion that Plaintiff retains the mental capacity to perform simple work tasks. As such, it is accorded less weight. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (the opinion of a medical specialist is generally accorded more weight than opinions of non-specialists). Plaintiff's daily activities also indicate that he is more moderately restricted than the medical source statement suggests. As noted by the ALJ, despite initially reporting that his daily activities were watching television and crying, Plaintiff later advised that he cares for his minor son, cooks, performs minor chores around the house, and attends to his personal needs including his insulin injections.

Substantial evidence supports the ALJ's assessment that Plaintiff retains the physical residual functional capacity to perform sedentary work, and Plaintiff has not shown to a reasonable degree of probability, that had the ALJ obtained Dr. Abboud's new medical source statement, it would have changed the outcome of the Commissioner's

---

[14]*Holmstrom v. Massanari*, 270 F.3d 715, 720 (8th Cir. 2001) (the checklist format, generality, and incompleteness of the assessments limit their evidentiary value).

decision. Further, even if the ALJ erred in failing to re-contact Dr. Abboud, the error was corrected by the Appeals Council, which considered his medical source statement and found that it provided no basis for changing the ALJ's decision.

### B. Mental Capacity

Substantial evidence also supports the ALJ's finding that Plaintiff retains the mental capacity to perform sedentary work. The ALJ's limitation to simple repetitive tasks is consistent with the findings of both Dr. Whelan and Dr. Herzog, which are not challenged by Plaintiff on appeal. Dr. Herzog found Plaintiff has moderate limitations in two or more functions in the areas of understanding and memory, concentration and persistence, social interaction, and adaptation, but no "marked mental limitations that would disable him from some types of work."[15] She particularly noted that Plaintiff had "no known history of mental health treatment," and had only "very recently began taking medication as prescribed by his non-psychiatric physician to target symptoms of depression." His limitations in interpersonal functioning were also merely "symptomatic of his heretofore untreated depression."[16] Dr. Whelan similarly observed that Plaintiff had a treatable mood disorder and had only recently begun taking antidepressants. He noted that Plaintiff would "probably have some difficulty with maintaining his attention and concentration," but his abstract reasoning was otherwise good. And though he opined that

---

[15]ECF No. 6-10, pp. 26, 30.

[16]ECF No. 6-10 p. 26.

somatic complaints would interfere with Plaintiff's capacity to interact with supervisors, Dr. Herzog found that he could still "interact adequately in order to receive non-confrontational supervision," and on "a casual, non-frequent basis with co-workers." It was her assessment that Plaintiff "retains the mental capacity to understand and carry out instructions for learning to perform simple work tasks" without excessive interruption from symptoms.[17]

Plaintiff relies on Dr. Brown's psychological report as new and material evidence of his mental capacity. It is important to note that Dr. Brown's report was completed some six months after the ALJ's decision, and nearly two years after Dr. Whelan and Dr. Herzog reported their findings. At best, it is evidence of the deterioration of Plaintiff's previous condition. *Haywood*, 888 F.2d at 1472 ( a medical assessment is not material if it reports only on the claimant's recent health and current functional status). As such, it may have rightfully provided a basis for his subsequent application for benefits, but it cannot serve as basis for remand. *See, e.g.*, *Leggett*, 67 F.3d at 567.

**Conclusion**

For all the above reasons, it is the opinion of the undersigned United States Magistrate Judge that Plaintiff's Motion to Remand should be denied; that Defendant's Motion to Affirm the Commissioner's Decision be granted; that Plaintiff's appeal be dismissed with prejudice; and, that Final Judgment in favor of the Commissioner be

---

[17]ECF No. 6-10, p. 30.

entered.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009).

This the 27th day of July 2012.

/s/ Linda R. Anderson<br>UNITED STATES MAGISTRATE JUDGE