**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**BERNARD CORBITT**                                                                  **PLAINTIFF**

**v.**                                                        **CAUSE NO. 3:10-CV-558-CWR-LRA**

**COMMISSIONER OF SOCIAL**                                    **DEFENDANT**
**SECURITY ADMINISTRATION**

**ORDER**

      Before the Court are the plaintiff's motion to remand or reverse, Docket No. 12, the Report and Recommendation of the United States Magistrate Judge, Docket No. 15, and the plaintiff's objection to the Magistrate Judge's Report and Recommendation, Docket No. 16. The objection is fully briefed, *see* Docket Nos. 17-18, and a telephonic hearing was held on December 4, 2012, to consider the parties' arguments in more detail. After reviewing the administrative record, the arguments, and the applicable law, the plaintiff's objection will be sustained in part and this matter will be remanded to the Social Security Administration for a new hearing.

**I.**     **Procedural History**

      In January 2008, Bernard Corbitt filed an application with the Social Security Administration for disability insurance benefits (DIB) and supplemental security income (SSI). R. 18.[1] He claimed a disability onset date of October 6, 2005. *Id.* Corbitt's insured status requirement was met through September 2008. *Id.* at 20. The ALJ denied the claim in October 2009. *Id.* at 26. The Appeals Council affirmed the denial in August 2010. *Id.* at 1. This suit followed.

      Corbitt later filed a second application alleging a disability onset date of December 31, 2009. Docket No. 15, at 2. The application was for SSI only; he could not seek DIB because his insured status had expired. Corbitt's second application was ultimately approved. *Id.*

      In this action, therefore, the parties seek to resolve whether Corbitt was disabled between October 6, 2005, and December 31, 2009, and therefore should have qualified for SSI and DIB in his first application.

---

[1] The administrative record, which is filed at Docket Nos. 6-1 through 6-10, will be cited as "R. __" using the numbers Bates stamped on the lower right-hand corner of each page.

## II. Standard of Review

"On judicial review, the ALJ's determination that a claimant is not disabled will be upheld, if the findings of fact upon which it is based are supported by substantial evidence on the record as a whole, and if it was reached through the application of proper legal standards." *Loza v. Apfel*, 219 F.3d 378, 389 (5th Cir. 2000) (citations omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007) (quotation marks and citation omitted). "In applying the substantial evidence standard, we scrutinize the record to determine whether such evidence is present." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted). "We may not reweigh the evidence or substitute our judgment for that of the Commissioner." *Audler*, 501 F.3d at 447 (citation omitted).

## III. Discussion

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To receive disability benefits, a claimant's impairment or combination of impairments, *see id.* § 423(d)(2)(B), must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In arriving at a decision, the ALJ proceeds through the familiar five-step sequential evaluation process, determining whether:

> (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. If, at any step, the claimant is determined to be disabled or not disabled, the inquiry is terminated. The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform.

*Audler*, 501 F.3d at 447-48 (citation omitted); *see Greenspan*, 38 F.3d at 236. "The ALJ's decision

must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (citation omitted).

Here, the ALJ determined that Corbitt had not engaged in substantial gainful activity since October 6, 2005. R. 20. Corbitt was determined to suffer from three severe impairments: obesity, arthralgia, and depression. *Id.* The ALJ concluded that Corbitt's diabetes and sleep apnea were "not severe, as they result in only minimal functional limitations (*Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985)). In particular, with regard to the claimant's diabetes, the record contains no evidence of any end organ damage which has resulted from this impairment." *Id.* at 21. The ALJ found that Corbitt's impairments or combination of impairments did not meet or equal a listed impairment. *Id.* The decision concluded that while Corbitt could not perform his past work, he had the residual functional capacity to perform simple and repetitive sedentary work. *Id.* at 22-25.

### A. Evidence from Corbitt's Treating Physician

The parties begin by disputing whether the Appeals Council adequately considered newly-submitted evidence from Corbitt's treating physician, Dr. Elias Abboud.[2] *Id.* at 95.

As background, Corbitt proceeded *pro se* before and during his hearing with the ALJ. *Id.* at 30-31. At that time, the evidence from Dr. Abboud consisted of a handwritten note on a prescription pad. *Id.* at 24, 223. Upon receiving the ALJ's written opinion denying benefits, Corbitt retained counsel, who then procured from Dr. Abboud a Medical Source Statement (MSS) and submitted it to the Appeals Council along with an argument for remand or reversal. *Id.* at 146.

The MSS contained substantially more detail about Corbitt's impairments and abilities than Dr. Abboud's handwritten note. Docket No. 7, at 19-24. It discussed Corbitt's illnesses, including diabetes and depression, their length and severity, and Dr. Abboud's opinion that Corbitt was unable to tolerate low stress jobs. *Id.* Dr. Abboud concluded that while Corbitt could work with a variety of restrictions, his combination of impairments would likely result in him being absent from work more than four days per month. *Id.* at 24.

Impairments (or combinations of impairments) severe enough to cause more than four work absences a month, though, preclude a clamant's ability to work successfully, according to the

---

[2] Although the record is not clear as to whether Dr. Abboud began treating Corbitt in 2002 or 2004, *see* R. 95, Docket No. 7, at 19, it is not necessary to resolve that question. Either way, Dr. Abboud had been treating Corbitt years before Corbitt's claimed disability onset date.

vocational expert who testified at Corbitt's hearing. R. 37-38. The MSS therefore contradicted the ALJ's earlier findings regarding Corbitt's residual functional capacity. Where the ALJ found that Corbitt could work, *id.* at 25, the MSS supports a finding that Corbitt cannot perform any job existing in the national economy, *see id.* at 38.

The Appeals Council rejected the MSS without explanation. *Id.* at 1-2. That may or may not be a HALLEX violation. *Compare Newton*, 209 F.3d at 459 ("the Appeals Council must 'specifically address additional evidence or legal arguments or contentions submitted in connection with the request for review.'"), *with Higginbotham v. Barnhart*, 405 F.3d 332, 335 n.1 (5th Cir. 2005) ("It appears that the requirement of a detailed discussion of additional evidence was suspended by a memorandum from the Executive Director of Appellate Operations dated July 20, 1995.").

Regardless, the Appeals Council erred when it declined to remand the case to resolve the evidentiary conflict created by the MSS. Because the MSS was from the claimant's longtime treating physician and was therefore entitled to significant weight, and because it directly contradicted the ALJ's findings regarding Corbitt's ability to successfully work, its submission should have triggered a remand for further factual development or resolution of the conflict.

The lack of remand amplified an earlier problem. By not asking Corbitt's treating physician to provide more detailed findings than a handwritten note on a prescription pad, the ALJ did not satisfy his duty to develop the record. *See Newton*, 209 F.3d at 458 ("The Fifth Circuit also imposes a duty on an ALJ to develop the facts fully and fairly relating to an applicant's claim for disability benefits."); *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) ("When a claimant is not represented by counsel, the ALJ owes a heightened duty to 'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'"). The treating physician's opinion was too important to rely solely upon the prescription pad note, and it could have been gathered without substantial delay. *See Newton*, 209 F.3d at 455 ("The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability."); *Chandler v. Astrue*, No. 1:10-cv-60, 2010 WL 4362853, *5 (N.D. Miss. Oct. 27, 2010) ("It is clear that additional development of the record, specifically in the form of opinions from the treating physicians, could have been easily obtained, and probably would have been helpful, had the ALJ sought such information.").

The government defends the Appeals Council's denial by arguing that Dr. Abboud's MSS was two months untimely. Docket No. 9, at 9-10. It claims "[i]t is proper for the Appeals Council to reject evidence that post-dates the ALJ's decision." *Id.* at 10 (citing *Johnson v. Heckler*, 767 F.2d 180 (5th Cir. 1985)).

The Appeals Council, however, made no such finding. It wrote only that the MSS did "not provide a basis for changing the [ALJ's] decision," suggesting that the MSS was considered on its merits.[3] R. 2. It is too late for the government to introduce new justifications for the Appeals Council's actions, since "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton*, 209 F.3d at 455 (citation omitted).

The government's supporting cases are also inapposite. The *Johnson* decision held that evidence of *deterioration* presented long after the Secretary's *final* decision did not create a basis for remand. *Johnson*, 767 F.2d at 183. That is not the situation here. Corbitt's new evidence was submitted to the Appeals Council, which means it was presented before the Commissioner's final decision. In addition, the MSS showed that Corbitt already had a disability condition, not that his condition had deteriorated and should *now* be considered to be disabling.[4]

The regulations governing Social Security proceedings state that it is the substance of the new evidence, not its date, that makes it eligible for Appeals Council review:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only <u>where it relates to the period on or before the date of the administrative law judge hearing decision</u>. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will

---

[3] While the Appeals Council did not reject the MSS as untimely, it did reject another piece of new evidence, a report by Dr. Stella Brown, because it was dated six months after the ALJ's hearing decision. R. 2. This ruling was correct. The briefing suggests that Dr. Brown did not have had firsthand knowledge of Corbitt's condition during the time period relevant to Corbitt's application. *See* Docket No. 7, at 2-3. Her new evidence was therefore not material to whether Corbitt was disabled during that time.

The exclusion of Dr. Brown's report illustrates why the Appeals Council should have given appropriate weight to the MSS. Because Dr. Abboud *had* treated Corbitt throughout the relevant time period, his new evidence was material to the Appeals Council's decision. Consideration of the MSS should have resulted in remand.

[4] The government also cites one district court opinion which found that because a "wheelchair prescription is dated after the ALJ's decision, it clearly falls outside of the relevant time period." *Thompson v. Comm'r of Soc. Sec. Admin.*, No. 1:00-CV-656, 2002 WL 31098511, *7 (E.D. Tex. July 30, 2002). That does not support the government's broad claim that post-hearing evidence is always barred. The submission of a brand-new prescription, without explanation, suggests deterioration, not earlier disability.

>then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b) (emphasis added).[5] That conforms with the Appeals Council's undated letter to Corbitt's attorney stating that "You may send us more evidence or a statement about the facts and the law in this case. Any more evidence must be new *and* material to the issues considered in the hearing decision dated October 20, 2009." R. 7.

Notwithstanding the government's current arguments, the record shows that the Appeals Council considered the MSS and rejected it on the merits. That decision was not supported by substantial evidence. The MSS was in direct conflict with the ALJ's findings on Corbitt's impairments and Corbitt's ability to work successfully. Remand was appropriate.

The government's final argument on this point contends that this dispute ultimately does not matter since Corbitt used Dr. Abboud's MSS to file a new application for SSI, which was successful. Docket Nos. 9, at 10-11; 17, at 3. That seems to be a stronger argument for concluding that Social Security's error was *not* harmless, though, because it suggests that once an ALJ considered the MSS, Corbitt properly qualified for benefits.

The Court finds that appropriate consideration of the MSS could reasonably have led a finder of fact to a different conclusion on Corbitt's first application for Social Security benefits. Another hearing is necessary because Corbitt may be entitled to several years worth of lost payments as well as any benefits (financial or procedural) that derive specifically from DIB as opposed to SSI only. The matter will be remanded.

### B. The Severity of Corbitt's Diabetes

The remaining issue warranting discussion is the ALJ's step two determination that Corbitt's diabetes was "non-severe" because it "result[s] in only minimal functional limitations." R. 21. The finding was a product of legal error because the ALJ misapplied the *Stone* standard. The error is not seriously disputed; the ALJ substituted his own definition of "severe" for the Fifth Circuit's. *E.g.*, *Loza*, 219 F.3d at 392-93 ("The ALJ erroneously applied his own standard involving a slight

---

[5] Restated, evidence that post-dates a hearing does not mean it is unrelated to a claim and automatically disallowed. The government cannot decline to consider new and material evidence provided to the Appeals Council solely because it was submitted after the hearing, as long as it relates to the relevant period of (claimed) disability. Such a refusal would be contrary to the plain language of the CFR.

restriction in 'activities of daily living' instead of this court's standard based on a slight abnormality having such minimal effect as would not be expected to interfere with 'ability to work, irrespective of age, education or work experience.'"); *Beamon v. Astrue*, No. 3:07-CV-208, 2009 WL 5184418, *5-6 (S.D. Miss. Dec. 22, 2009) (remanding where ALJ "ruled that the Plaintiff's knee impairments [were] 'not severe' and affected his work ability 'only mildly.'").

The government contends that any *Stone* error was harmless because the ALJ found other impairments to be severe, worked through the rest of the five-step evaluation process, and considered diabetes in that process. Docket No. 9, at 6-8.

"Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (citations omitted). "The major policy underlying the harmless error rule is to preserve judgments and avoid waste of time." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (citation omitted) (declining to remand case where remand "would produce the same result while wasting time and resources.").

The Court will assume without deciding that a harmless error analysis is necessary in instances of *Stone* error.[6] It will compare the record evidence to the ALJ's findings to determine the extent to which the ALJ considered diabetes in the remainder of the five-step evaluation process.

The record shows that Corbitt reported uncontrollable blood sugar levels with highs and lows causing headaches and blurred vision. R. 93. The blurred vision caused Corbitt to stop driving because he did not feel safe. *Id.* at 103, 108. Social Security disability determination reports by Doctors Herzog and McDonnieal identified Corbitt's diabetes as the primary or secondary diagnosis at issue. *Id.* at 39-42. Dr. Whelan, the consulting psychologist, found that "[w]hen [Corbitt] developed diabetes three years ago, he stopped participating in the work force." *Id.* at 198. Corbitt's diabetes was linked to depression, as he reported "crying for the past three years since he found out he had diabetes." *Id.* at 196; *see also id.* at 105-06, 198. Dr. Wade, the sleep apnea consultant, found

---

[6] The question remains disputed. *Compare Key v. Astrue*, No. 3:06-CV-1087, 2007 WL 2781930, *4 (N.D. Tex. Sept. 4, 2007) ("the failure to apply the correct standard to the severity requirement has been held to be an independent and sufficient reason to require remand in cases adjudicated beyond the second step of the sequential evaluation analysis.") *with Jones v. Astrue*, 851 F. Supp. 2d 1010, 1016 (N.D. Tex. 2012) ("there is no logic, common sense, or Fifth Circuit support for a conclusion that reversal and remand is required, or appropriate, if the only error of the administrative law judge was his failure to use the *Stone* severity standard at step two of his analysis.").

Corbitt's diabetes and headaches "significant." *Id.* at 224.

At the hearing, Corbitt identified diabetes as his worst problem. *Id.* at 33. He testified that although he eats the right foods and exercises like his doctor orders, his blood sugar remains high and his diabetes medicine creates stomach problems like diarrhea, which keeps him in the bathroom "constantly." *Id.* at 33-35; *see also id.* at 97, 130.[7]

In spite of this evidence, the ALJ's consideration of diabetes was limited to his conclusion, repeated twice, that it was not significant because there was no evidence of end organ damage. *Id.* at 21, 23. That finding, however, is not necessarily outcome-determinative. *See, e.g.*, *Martin v. Secretary*, 492 F.2d 905, 909-10 (4th Cir. 1974) ("Nothing in the Social Security Act requires rejection of a disability claim for hypertension or diabetes simply because the claimant has not yet experienced end organ damage."); *Alcantara v. Astrue*, 667 F. Supp. 2d 262, 272, 274 (S.D.N.Y. 2009) (affirming ALJ's finding that the claimant's diabetes was severe even though claimant displayed no end organ damage); *Ressegiue v. Secretary*, 425 F. Supp. 160, 163 (E.D.N.Y. 1977) ("That plaintiff's concededly severe diabetic condition may not have been further complicated by end organ damage, neuropathy, or acidosis is not a statutory ground for refusing to consider plaintiff's anatomical or physiological abnormality as a physical impairment 'which . . . has lasted or can be expected to last for a continuous period of not less than 12 months.'").

The ALJ's decision shows that he did not seriously consider the specific problems Corbitt's diabetes creates, such as the blurred vision and headaches. Nor did he discuss Corbitt's diabetes or related impairments during step three, in conjunction with the impairments he did find to be severe. *Id.* at 21-22; *see Loza*, 219 F.3d at 393 ("the ALJ is required to consider the combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."). In short, the ALJ did not think Corbitt's self-described worst impairment worthy of serious consideration.

Nor can the government fall back to argue harmless error based upon Corbitt's residual functional capacity assessment. As discussed above, the ALJ's residual functional capacity assessment was not supported by substantial evidence once Dr. Abboud's MSS was submitted.

---

[7] These paragraphs describe the evidence available to the ALJ. Once Dr. Abboud's MSS was provided to the Appeals Council, there was a greater body of evidence on Corbitt's diabetes. *See* Docket No. 7, at 19-20.

The Court concludes that Corbitt's diabetes was not sufficiently considered in the remainder of the five-step evaluation process to justify a finding of harmless error. The issue should be reconsidered on remand.[8]

## IV.    Conclusion

The plaintiff's objection is sustained in part. This matter is remanded to the Social Security Administration for a new hearing.

**SO ORDERED**, this the 19th day of February, 2013.

s/ Carlton W. Reeves<br>UNITED STATES DISTRICT JUDGE

---

[8] The Court need not take up Corbitt's remaining arguments for remand or reversal.